UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

| | |
|---|---|
| In re:<br><br>Shannon Patrick Casey<br>and Shawna Casey,<br><br>    Debtors. | Case No. 10-10492-s7<br><br>Chapter 7 |
| Folson Farm Corporation, *et al*<br><br>    Plaintiffs,<br><br>v.<br><br>Shannon Patrick Casey,<br><br>    Defendant. | Adv. Pro. 10-01068-s |
| Shannon Patrick Casey,<br><br>    Cross-Plaintiff,<br>v.<br><br>Gerald Anderson and<br>Julie Anderson,<br><br>    Cross-Defendants. | |

**Plaintiffs' Opposition to Defendant's Motion to
Dismiss & Incorporated Memorandum of Law**

Plaintiffs Folson Farm Corporation, Potandon Produce, L.L.C., Mart Produce Corporation, and Billingsley Produce Sales, Inc., pursuant to Rule 9013-1.1 of the Local Rules of this Court, respond to the Debtor's Motion to Dismiss [DE 31] as follows:

I.   **Issue**

The primary issue presented by the Debtor's Motion to Dismiss is whether the statutory trust created by the Perishable Agricultural Commodities Act[1] ("PACA") satisfies the requisites of an express trust that is exempt from discharge under 11 U.S.C. §523(a)(4).

II.   **Short Answer**

Yes. While the Debtor relies on minority decisions limiting the import of the PACA trust, the overwhelming majority of courts nationwide have held that the PACA trust is an express trust for the purposes of §523(a)(4).

III.   **Overview of PACA**

PACA was enacted in 1930 "to suppress unfair and fraudulent practices in the marketing of fruits and vegetables in interstate and foreign commerce."[2] It requires produce dealers to make "full payment promptly" for any produce they purchase.[3] In 1984, PACA was amended to "increase the legal protection for unpaid sellers and suppliers of perishable agricultural commodities."[4] This amendment imposed a statutory trust on all produce-related assets, including the produce itself, cash, inventories of perishable agricultural commodities

---

[1] 7 U.S.C. §499e, et seq.

[2] 49 Fed. Reg. 45737.

[3] 7 U.S.C. §499(b)(4).

[4] 1984 U.S. Code Cong. & Admin. News 406; See also *Frio Ice, S.A. v. Sunfruit, Inc.*, 918 F.2d 154, 159 (11th Cir. 1990) ("... the central purpose of Section 499e(c) is to ensure payment to trust beneficiaries.").

("Produce"), food or products derived from Produce ("Products"), accounts receivable and other proceeds of the sale of Produce or Products, and assets commingled or purchased or otherwise acquired with proceeds of such Produce or Products must be maintained for the benefit of all unpaid suppliers and sellers of the produce until full payment has been made.[5] The trust arises upon the commencement of the produce purchaser's business, and is continually in existence throughout the life of the purchaser's business.[6]

The trust provisions of PACA at 7 U.S.C. §499e(c) also impose a duty upon the dealer to establish a statutory, non-segregated trust that holds its PACA Trust Assets for the benefit of the trust creditors with valid and enforceable PACA trust claims. PACA mandates that the trustee maintain trust assets in such a manner that these assets are "freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities."[7] Failure to maintain the trust and make full payment promptly to the trust beneficiary is unlawful.[8] Since general principles of trust law govern the PACA trust, any act or omission that is inconsistent with this duty, including dissipation of trust assets, is unlawful and

---

[5] 7 U S.C. §499e(c)(2); See also *United Potato Co. v. Burghard & Sons*, 18 F. Supp. 2d 894, 898 (N.D. Ill. 1998), citing *Harllee-Garguilo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997), citing to 7 U.S.C. §499e(c)(2).

[6] *In re Kornblum & Co., Inc.*, 81 F.3d 280, 286 (2nd Cir. 1996); *In re Atlantic Tropical Market Corp.*, 118 B.R. 139, 142 (Bankr. S.D. Fla. 1990).

[7] 7 U.S.C. §499b(4) and 7 C.F.R. §46.46(d)(1).

[8] 7 U.S.C. §499b(4).

constitutes a "breach of trust."[9]

## IV. The PACA is an express or technical trust for purposes of 11 U.S.C. §523(a)(4).

Section 523(a)(4) of the Bankruptcy Code provides that any debt incurred because of "fraud or defalcation while acting in a fiduciary capacity" is excepted from discharge.[10] In *Davis v. Aetna Acceptance Co.,* the Supreme Court limited the term "fiduciary" to relationships constituting "technical trusts."[11] Since the *Davis* decision, the Fifth, Ninth, and Eleventh Circuits, have identified specific factors that must be considered in order to evaluate trusts under §523(a)(4).[12] First, a technical trust relationship must exist prior to the act creating the debt.[13] Next, the fiduciary duties must be specifically set forth.[14] Finally, some Courts have found that a separately identifiable *res* is essential to an express trust for the purposes of §523(a)(4).[15] Applying these principles to the PACA trust, the majority of courts nationwide have held that PACA's trust provisions satisfy the

---

[9] Restatement (Second) of Trusts, §201; 7 C.F.R. §46.46(d)(1) (See also *Harllee-Gargiulo*, 131 F.3d at 1000, citing to *C.H. Robinson Co. v. Trust Co. Bank, N.A.*, 952 F.2d 1311 (11th Cir. 1992))

[10] 11 U.S.C. §523(a)(4).

[11] 293 U.S. 328 (1934). See also *In re Harper*, 150 B.R. 416, 419 (Bankr. E.D. Tenn., 1993); *In re Booker,* 165 B.R. 164, 170 (Bankr. D.N.C. 1994).

[12] *In re Angelle*, 610 F.2d 1335 (5th Cir. 1980); *In re Pedrazzini,* 644 F.2d 756 (9th Cir. 1981); and *In re Quaif v. Johnson,* 4 F.3d 950, 953 (11th Cir. 1993).

[13] *Id*.

[14] *Id.*

[15] *In re Librandi,* 183 B.R. 379, 383 (M.D. Pa. 1995); *In re Eichelberger,* 100 B.R. 861, 865 (Bankr. S.D. Tex. 1989); *In re Kelley,* 84 B.R. 225, 230 (Bankr. M.D. 1988); and *In re McCraney*, 63 B.R. 64, 67 (Bankr. N.D. Ala. 1986).

fiduciary capacity requirement defined by §523(a)(4).[16]

      **a.    Under PACA, a technical trust relationship exists prior to the act creating the debt and without reference to that act.**

The PACA trust arises by operation of law upon delivery of the Produce, and continues until full payment for the Produce has been made.[17] It imposes a fiduciary duty upon Tan-O-On Marketing and its principals to maintain and preserve PACA trust assets in such a manner that these assets are "freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities" such as those asserted by Plaintiffs in this case. The PACA trust arises and continues in existence separate from any alleged act of wrongdoing by the Debtor.[18]

      **b.    Under PACA, a trust relationship is expressly and clearly imposed.**

There are a number of specific fiduciary duties imposed by PACA on purchasers of produce, such as maintenance of trust assets to ensure that they are freely available to pay produce suppliers and a prohibition on dissipation of PACA trust assets.[19] "Any act or omission inconsistent with this responsibility,

---

[16] *In re Watford*, 374 B.R. 184 (M.D.N.C.,2007), *In re Masdea*, 307 B.R. 466 (W.D.Pa.,2004); *Matter of Snyder*, 184 B.R. 473 (D.Md.,1995); *Collins Bros. Corp. v. Perrine (In re Perrine),* 2006 Bankr. LEXIS 2516 (Bankr. D. Ga. 2006); *In re Masdea*, , 474 (Bankr. W.D. Pa 2004); *In re Harper*, 150 B.R. at 419 (PACA creates a fiduciary relationship between the creditors and the debtor); *In re Stout* 123 B.R. 412, 415 (Bankr. W.D. OKL. 1990); *In re Milton Poulos, Inc.*, 94 B.R. 648, 652 (Bankr. C.D. Cal. 1988) (PACA is a valid enforceable trust in Bankruptcy)

[17] 7 C.F.R. §46.46(d)(1), 7 U.S.C. §499e.

[18] 7 U.S.C. §499e(c)(2).

[19] 7 C.F.R. §46.46(a)(1)

including dissipation of trust assets, is unlawful and a violation of PACA."[20]

Furthermore, the breach of the fiduciary duties imposed by PACA results in personal liability for an individual who is in a position of control over PACA trust assets, and who has failed to preserve those assets for the beneficiaries.[21] These fiduciary duties are not carried out by a business or corporation, but by the individuals who are responsible for the operation of the corporation.[22] As a matter of law, the individuals who are responsible for the operation of the business are bound by several fiduciary duties, which include:

(1) The duty to maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations to produce sellers;[23]

(2) The duty to prohibit the dissipation of trust assets;[24]

(3) The duty to pay produce suppliers in a timely manner from the trust assets;[25]

(4) If acting on behalf of a supplier, the duty to file trust notices for the

---

[20] 7 U.S.C. §499b; *In re Harper*, 150 B.R. at 419.

[21] See, e.g., Golman-Hayden Co., Inc. v. Fresh Source Produce, Inc., 217 F.3d 348 (5th Cir. 2000); Sunkist Growers, Inc. v. Fisher, 104 F.3d 280, 283 (9th Cir. 1997); Reds Market v. Cape Canaveral Cruise Line, Inc., 181 F.Supp. 2d 1339 (M.D. Fla. 2002), aff'd 2002 WL 2001204 (11th Cir. 2002).

[22] Golman-Hayden Co., Inc. v. Fresh Source Produce, Inc., 217 F.3d 348 (5th Cir. 2000); Sunkist Growers, Inc. v. Fisher, 104 F.3d 280, 283 (9th Cir. 1997); Larry Sheppard v. KB Fruit & Vegetable, Inc., 868 F.Supp. 703 (E.D. Pa. 1994); Morris Okun, Inc. v. Harry Zimmerman, Inc., 814 F.Supp. 346 (S.D.N.Y 1993); Reds Market v. Cape Canaveral Cruise Line, Inc., 181 F. Supp. 2d 1339. (M.D. Fla. 2002), aff'd 2002 WL 2001204 (11th Cir. 2002).

[23] 7 C.F.R. §46.46(a)(1)

[24] 7 C.F.R. §46.46(a)(1)

[25] 7 C.F.R. §46.46(f)

supplier;[26]

(5) The duty to maintain copies of payment agreements in the corporations' files;[27] and

(6) The duty to maintain bookkeeping entries to identify what assets are part of the trust for the benefit of produce suppliers[28].

Thus, the statutory trust created by PACA clearly imposes sufficient fiduciary duties for the PACA trust to be considered a technical or express trust for the purposes of §523(a)(4).

### c. PACA trust assets are a separately identifiable *res*

The Debtor argues that the PACA trust *res* "is undefined, does not have to be segregated, can be used to pay other creditors, and does not even have to be separately accounted for," and concludes that the PACA trust does not satisfy the strict requisites for "a nondischargeable liability under §523(a)(4)." These arguments are meritless

#### 1. *Segregation*

Casey argues that PACA is not an express or technical trust because it does not require segregation of the trust *res*. In support of this argument, Casey relies on *In re McCue*, 324 B.R. 389 (M.D.Fla., 2005), a minority decision holding that segregation is necessary to establish the existence of an express or technical

---

[26] 7 C.F.R. §46.46(d)(2)

[27] 7 C.F.R. §46.46(f)(1)

[28] DeBruyn Produce Co. v. Victor Foods, Inc., 674 F.Supp. 1405 (E.D. Mo. 1987)

trust under PACA.[29] Aside from the *McCue* Court, Federal courts have consistently and uniformly held that PACA creates an express or technical trust, and imposes fiduciary duties upon the Produce buyer that fall within §523(a)(4)'s requirements.[30] The *McCue* decision not only represents the minority view of this issue, but its analysis and conclusion have been specifically disregarded by several courts.[31] Furthermore, the Middle District's decision in *McCue* is contrary to the binding authority in the Eleventh Circuit, wherein "a separation of … funds into distinct bank accounts is <u>not</u> an essential requirement of a trust."[32]

### 2. *PACA trust res is defined*

Since the law is clear that segregation of the funds is not necessary to establish the existence of an express or technical trust under PACA, the next question is whether or not the PACA statute sufficiently identifies the trust *res*. The statute states that the PACA trust consists of "perishable agricultural commodities . . . and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the

---

[29] See, Cardile Bros. Mushroom Pkg., Inc. v. McCue (In re McCue), 324 B.R. 389, 393 (Bankr. M.D. Fla. 2005).

[30] See, *In re Masdea,* 307 B.R. 466, 474 (Bankr. W.D. Pa. 2004); *In re Snyder*, 184 B.R. at 474; *In re Harper,* 150 B.R. 416, 419 (Bankr. E.D. Tenn. 1993); *In re Nix,* 1992 U.S. Dist. LEXIS 22080, 1992 WL 119143 (M.D. Ga. 1992); and *In re Stout,* 123 B.R. 412 (Bankr. W.D. Okla. 1990).

[31] *Collins Bros. Corp. v. Perrine (In re Perrine),* 2006 Bankr. LEXIS 2516, 18-19 (Bankr. D. Ga. 2006). *In re Parra*, 412 B.R. 99, 105 (Bankr.E.D.N.Y. Sep 11, 2009), *In re Bartlett*, 397 B.R. 610, 620 (D.Mass. Dec 01, 2008); and *In re Perrine*, 2006 WL 6589890, *5 (Bankr.N.D.Ga. Aug 08, 2006).

[32] *Quaif v. Johnson,* 4 F.3d 950, 954 (11th Cir. 1993). See also, *In re Menedez,* 107 Bankr. 790, 792 (Bkrtcy, S.D. Fla. 1989) (reversed on other grounds).

Page 8 of 13
Case 10-01068-s   Doc 34   Filed 03/15/11   Entered 03/15/11 15:15:48   Page 8 of 13

sale of such commodities or products."[33] The statutory description of the PACA trust *res* clearly satisfies this requirement.[34]

In addition, the language of PACA suggests that Congress intended traditional concepts of trust law to be applied to cases brought under PACA. Throughout the language of PACA, Congress used the language and terminology of trust law. For example, terms such as "trust asset", "beneficiary," "fiduciary," and "trustee," which arise from trust law, appear throughout the statute.[35] A PACA trustee is required to hold the Produce received and accounts receivable or proceeds derived from their sale in trust "until full payment of the sums owing in connection with such transactions has been received by the unpaid supplier or seller."[36] Furthermore, any assets purchased while the trust is in existence are presumptively PACA trust assets and will, therefore, become part of the trust fund assets available to satisfy the claims of the qualified unpaid sellers.[37] When trust assets are commingled with funds not subject to the trust, the trust is impressed upon the entire commingled fund for the <u>benefit of the</u>

---

[33] 7 U.S.C. §499e(c)(2).

[34] *N.P. Deoudes v. Snyder (In re Snyder)*, 184 B.R. 473, 475 (D. Md. 1995) (The "statute must define the trust *res*, spell out the trustee's fiduciary duties and impose a trust prior to and without reference to the wrong which created the debt."); *Nuchief Sales, Inc. v. Harper (In re Harper)*, 150 B.R. 416, 419 (Bankr. E.D. Tenn. 1993); *Consumers Produce, Inc. v. Masedea (In re Masdea)*, 307 B.R. 466 (Bankr. W.D. Pa. 2004); *Tom Lange Co., Inc v. Stout (In re Stout)*, 123 B.R. 412 (Bankr. W.D. Okla. 1990); *Nix v. Adam's Produce Co. (In re Nix)*, 1992 U.S. Dist. LEXIS 22080; 1992 WL 119143 (M.D. Ga. 1992).

[35] 7 U.S.C. §499a, *et seq.*

[36] 7 U.S.C. §499e(c)(2).

[37] *In Re Atlantic Tropical Market Corp.*, 118 B.R. 139, 142 (Bankr. S.D. Fla., 1990).

<u>trust beneficiaries</u>.[38]

        3.    *Use of PACA trust assets*

The PACA statute expressly requires the trustee to maintain PACA trust assets in such a manner that these assets are "freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities."[39] Any act or omission inconsistent with this duty to the PACA beneficiaries - including diversion of trust assets which prejudice or impair the ability of unpaid sellers to recover money owed in connection with produce transaction - is unlawful and constitutes a "breach of trust."[40]

Relying on the <u>Department of Agriculture Explanation of the Regulations Under PACA</u>[41], Casey argues that PACA trust assets may be used for general business expenses without prohibition. This argument is disingenuous, as it ignores the remainder of the USDA's statement, which allows this use provided that sufficient funds are available to pay the produce creditors. It states:

> It is the buyer's or receiver's responsibility as a trustee to insure that it has sufficient assets to assure prompt payment for produce and that any beneficiary under the trust will receive full payment....

Consistent with the USDA's explanation, the Second Circuit held that PACA trustee may use trust assets to pay ordinary business expenses, *provided that* it

---

[38] *In Re Gotham Provision Co.*, 669 F.2d 1000 (5th Cir., 1982).

[39] 7 C.F.R. §46.46(b); 7 C.F.R. §46.46(e)(1).

[40] 7 U.S.C. §499b(4); 7 C.F.R. §46.46(a)(2); 7 C.F.R. §46.46(d)(1).

[41] 49 F.R. 45735, 45738.

does not do so at the expense of its PACA beneficiaries, or in any way impair the ability of the beneficiaries to collect money owed in connection with produce sales.[42]

### d. Conclusion

Based upon the foregoing, PACA satisfies each requirement of an express or technical trust in order to invoke the §523(a)(4) exception to discharge.

## V. Holding that the PACA trust is not an express or technical trust undermines Congress' intent.

Congress amended PACA in 1984 in order to "increase the legal protection for unpaid sellers and suppliers of perishable agricultural commodities until full payment of sums due has been received by them."[43] In doing so, Congress wrote that those commodities or their proceeds "shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents."[44] In order to enforce this trust provision, Congress included a provision enabling trust beneficiaries to file suit in federal district court to enforce payment[45] and

---

[42] *C.H. Robinson Co. v. Alanco Corp.* 239 F.3d 483, 488 (2d Cir.2001)

[43] 1984 U.S.C.C.A.N. 406 (emphasis added)

[44] 7 U.S.C. §499e(c)(2) (emphasis added).

[45] 7 U.S.C. §499e(c)(4)(i)

empowered the Secretary of Agriculture to file suit to prevent and restrain dissipation of the trust.[46]

Despite the clear purpose and intent of Congress, the argument advanced by the Debtor undermines Congressional intent to impose a statutory trust on produce, inventories of food, or other products derived from produce, and any receivables or proceeds from the sale of produce. A contrary holding by this Court reduces the positions of the PACA trust beneficiaries to those of mere general unsecured creditors. Such a holding is in direct conflict with the clear and express language of PACA and undermines the clear purpose and intent of Congress.

WHEREFORE, Plaintiffs respectfully requests that this Court enter an Order denying Defendant's Motion to Dismiss, along with such other and further relief deemed appropriate by this Court.

Dated Tuesday, March 15, 2011.

**MEUERS LAW FIRM, P.L.**

/s/ Katy Koestner Esquivel
Katy Koestner Esquivel
*Admitted Pro Hac Vice*
*Florida Bar No. 159484*
5395 Park Central Court
Naples, Florida 34109
Telephone: (239)513-9191
Facsimile: (239)513-9677
kesquivel@meuerslawfirm.com
*Counsel for Plaintiffs*

---

[46] 7 U.S.C. §499e(c)(4)(ii).

## CERTIFICATE OF SERVICE

      I certify that this document was electronically filed and is available on the CM/ECF system to:

| | |
|:---:|:---:|
| Shannon Robinson | David T. Thuma |
| Law Office of Shannon Robinson | Thuma & Walker PC |
| 1121 4th Street NW, Suite 1-A | 500 Marquette NW, Suite 650 |
| Albuquerque, NM 87102 | Albuquerque, NM 87102 |
| Tel: (505) 998-6600 | Tel: (505)766-9272 |
| Fax: (505) 998-6603 | Fax: (505)766-9287 |
| srdist17@aol.com | dthuma@thumawalker.com |

Dated Tuesday, March 15, 2011.

                                                          /s/Katy Koestner Esquivel
                                                           Katy Koestner Esquivel