UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re:
SHANNON PATRICK CASEY AND
SHAWNA CASEY,
        Debtors.                      N0. 7-10-10492-SA

FOLSON FARM CORPORATION,
POTANDON PRODUCE, L.L.C.,
MART PRODUCE CORPORATION, AND
BILLINGSLEY PRODUCE SALES, INC.,
        Plaintiffs,

v.                                          Adv. No. 10-1068-S

SHANNON PATRICK CASEY,
        Defendant/3rd Party Plaintiff,

v.

JULIE ANDERSON and
GERALD ANDERSON,
    3rd Party Defendants.

## MEMORANDUM OPINION ON DEFENDANT'S
## MOTION TO DISMISS ADVERSARY PROCEEDING

Folson Farm Corporation, Potandon Produce, L.L.C., Mart Produce Corporation, and Billingsley Produce Sales, Inc. ("Plaintiffs") filed this adversary proceeding to determine dischargeability of debt under 11 U.S.C. § 523(a)(4). Plaintiffs' claims are based upon an alleged dissipation of assets in an express statutory trust established by the Perishable Agricultural Commodities Act, 1930, § 5(c)(4), as amended, 7 U.S.C.A. § 499e(c)(4) ("PACA"). The second amended complaint (doc 6) alleges that Defendant was an officer and shareholder of Tan-O-On, a Colorado corporation, that was a dealer and commission merchant subject to the provisions of PACA.

It also alleges that between September 23, 2009 and December 28, 2009, Plaintiffs sold $310,963.25 of produce to Tan-O-On for which they have never been paid, despite the fact that all of their invoices contained the statutory language required by PACA to enforce their rights as beneficiaries. Plaintiffs also claim that PACA shifts the liability for payment to Defendant by placing him in a fiduciary capacity to ensure payment of Tan-O-On's debts and that Defendant breached his fiduciary duties.

Defendant filed the instant Motion to Dismiss (doc 31), claiming that PACA does not impose the stricter fiduciary duties required by the Bankruptcy Code and the Tenth Circuit Court of Appeals' interpretation of Section 523(a)(4). Plaintiffs filed a response. (Doc 34). For the reasons set forth below, the Court will deny the Motion to Dismiss.[1]

**STANDARD FOR DISMISSAL**

Fed.R.Civ.P. 12(b)(6) allows a defendant to request dismissal for failure to state a claim. This rule is applicable to adversary proceedings under Fed.R.Bank.P. 7012(b). When a court is reviewing a complaint for failure to state a claim, it looks at the plausibility of relief. Christy Sports, LLC v. Deer Valley Resort Co., Ltd., 555 F.3d 1188, 1191 (10th Cir. 2009)

---

[1] The Court has subject matter and personal jurisdiction pursuant to 28 U.S.C. §§1334 and 157(b); this is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(I); and these are findings of fact and conclusions of law as may be required by Rule 7052 F.R.B.P.

-2-

(citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)).
Factual allegations must be enough to raise a right to relief
above the speculative level.  Id.  The concept of "plausibility"
at the dismissal stage refers not to whether the allegations are
likely to be true; the court must assume them to be true.  Id. at
1191-92.  "The question is whether, if the allegations are true,
it is plausible and not merely possible that the plaintiff is
entitled to relief under the relevant law."  Id. at 1192 (citing
Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008)).

**SECTION 523(a)(4)**

Bankruptcy Code Section 523(a)(4) provides:

A discharge under section 727, ... of this title does
not discharge an individual debtor from any debt—
...
(4) for fraud or defalcation while acting in a
fiduciary capacity ...

In 2008, this Court discussed the prevailing law in the
Tenth Circuit regarding fiduciary capacity and section 523(a)(4).
Bonita Land & Livestock, Inc. v. Green (In re Green), 386 B.R.
865, 868-69 (Bankr. D. N.M. 2008):

> Accordingly, a finding of nondischargeability
> under section 523(a)(4) requires a showing of (1) the
> existence of a fiduciary relationship between the
> debtor and the objecting party, and (2) a defalcation
> committed by the debtor in the course of that fiduciary
> relationship.  Antlers Roof-Truss & Builders Supply v.
> Storie (In re Storie), 216 B.R. 283, 286 (10th Cir. BAP
> 1997) (citing Fowler Bros. v. Young (In re Young), 91
> F.3d 1367, 1371 (10th Cir. 1996)).
> ...
>      The existence of a fiduciary duty for section
> 523(a)(4) is a question of federal law, not a "fact"

-3-

that can be pled.  <u>Van De Water v. Van De Water (In re Van De Water)</u>, 180 B.R. 283, 289 (Bankr. D. N.M. 1995) (fiduciary capacity is a question of federal law; the general definition of fiduciary is too broad in the dischargeability context.); <u>Young</u>, 91 F.3d at 1371 ("The existence of a fiduciary relationship under § 523(a)(4) is determined under federal law.") In <u>Employers Workers' Compensation Assoc. v. Kelley (In re Kelley)</u>, 215 B.R. 468, 471–72 (10th Cir. BAP 1997), the Tenth Circuit Bankruptcy Appellate Panel discussed fiduciary duty:

> Section 523(a)(4) of the Bankruptcy Code excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity." The Tenth Circuit recently explained the meaning of "fiduciary capacity" in this provision.
>
> The existence of a fiduciary relationship under § 523(a)(4) is determined under federal law.  However, state law is relevant to this inquiry.  Under this circuit's federal bankruptcy case law, to find that a fiduciary relationship existed under § 523(a)(4), the court must find that the money or property on which the debt at issue was based was entrusted to the debtor. Thus, an express or technical trust must be present for a fiduciary relationship to exist under § 523(a)(4).  Neither a general fiduciary duty of confidence, trust, loyalty, and good faith, nor an inequality between the parties' knowledge or bargaining power, is sufficient to establish a fiduciary relationship for purposes of dischargeability.  "Further, the fiduciary relationship must be shown to exist prior to the creation of the debt in controversy." [<u>Allen v. Romero (In re Romero)</u>], 535 F.2d [618,] 621 [(10th Cir. 1976)].

<u>Fowler Bros. v. Young (In re Young)</u>, 91 F.3d 1367, 1371–72 (10th Cir. 1996) (additional citations omitted).  We are, of course, obliged to apply this narrow view of the fiduciaries who are covered by § 523(a)(4).

The Kelley court also noted that state statutes often, but not always, impose trusts on persons held to be fiduciaries as a matter of law based on their relationships.  <u>Kelley</u> 215 B.R. at 473.  <u>See also Van De Water</u>, 180 B.R. at 289 ("The trust requirement is

-4-

>     not limited to trusts arising out of a formal
>     agreement, but includes relationships in which
>     trust-type obligations are imposed pursuant to statute
>     or common law.") (Citation omitted.)  A statute must
>     meet three requirements to trigger section 523(a)(4)'s
>     fiduciary status: (1) the trust res must be defined by
>     the statute, (2) the statute must spell out the
>     fiduciary duty, and (3) the statute must impose a trust
>     on funds prior to the act creating the debt.  Kelley,
>     215 B.R. at 473.[2]

(Footnote in original).

**PACA**

PACA is codified in Title 7, Chapter 20A of the U.S. Code.

The relevant section is § 499e(c), which provides:

> Trust on commodities and sales proceeds for benefit of
> unpaid suppliers, sellers, or agents; preservation of
> trust; jurisdiction of courts.
> ...
> (2) Perishable agricultural commodities received by a
> commission merchant, dealer, or broker in all
> transactions, and all inventories of food or other
> products derived from perishable agricultural
> commodities, and any receivables or proceeds from the
> sale of such commodities or products, shall be held by
> such commission merchant, dealer, or broker in trust
> for the benefit of all unpaid suppliers or sellers of
> such commodities or agents involved in the transaction,
> until full payment of the sums owing in connection with
> such transactions has been received by such unpaid
> suppliers, sellers, or agents.

The Department of Agriculture has further promulgated regulations to implement PACA.  7 C.F.R. § 46.46.  These regulations define

---

[2] See also Davis v. Aetna Acceptance Co., 293 U.S. 328, 333 (1934): "It is not enough that, by the very act of wrongdoing out of which the contested debt arose, the bankrupt has become chargeable as a trustee ex maleficio. He must have been a trustee before the wrong and without reference thereto."

-5-

the trust assets:

> Trust assets. The trust is made up of perishable agricultural commodities received in all transactions, all inventories of food or other products derived from such perishable agricultural commodities, and all receivables or proceeds from the sale of such commodities and food or products derived therefrom. Trust assets are to be preserved as a nonsegregated "floating" trust. Commingling of trust assets is contemplated.

Id. §§ (b). Other subsections impose various duties on the parties to a PACA transaction. Agents must preserve their principal's PACA rights by filing required documents. Id. §§ (c)(2), (d)(2). Merchants, dealers and brokers are required to maintain the trust assets in a manner that such assets are freely available to satisfy outstanding obligations. Id. §§ (d)(1). "Any act or omission which is inconsistent with this responsibility, including dissipation of trust assets, is unlawful and in violation of Section 2 of the Act." Id. Payments must be prompt. Id. §§ (e)(1)-(2). Merchants, dealers and brokers are also required to keep detailed records that fully and correctly disclose all transactions involved in the business, including the ownership interests in the business, and they must produce them to the Secretary of Agriculture or his or her agent if requested. 7 U.S.C. §§ 499i, 499m. Finally,

> Trust assets are available for other uses by the buyer or receiver. For example, trust assets may be used to pay other creditors. It is the buyer's or receiver's responsibility as a trustee to insure that it has sufficient assets to assure prompt payment for produce and that any beneficiary under the trust will receive

-6-

full payment. To satisfy its obligations under PACA, a
produce buyer must simply "maintain trust assets in a
manner that such assets are freely available to satisfy
outstanding obligations to sellers of perishable
agricultural commodities." 7 C.F.R. § 46.46(d)(1).

C.H. Robinson Co. v. Alanco Corp., 239 F.3d 483, 488 (2nd Cir. 2001)(quoting Department of Agriculture Explanation of the Regulations Under PACA, 49 F.R. 45735, 45738.)(Some internal punctuation omitted.)

**APPLICATION OF KELLEY'S THREE PART TEST**

(1) The trust res must be defined by the statute.

7 U.S.C. § 499e(c)(2) clearly defines the trust res. See also 7 C.F.R. § 46.46(b); In re Atlantic Tropical Market Corp., 118 B.R. 139, 142 (Bankr. S.D. Fla. 1990)(The "floating trust" also includes assets purchased with trust assets, such as, in that case, a Mack truck.)

(2) The statute must spell out the fiduciary duty.

7 C.F.R. § 46.46 lists the fiduciary duties described above. The Court finds that these are sufficiently material duties to qualify the trust as an express statutory trust. Compare Kelley, 215 B.R. at 473 ("Simply restricting commingling of funds does not sufficiently define the fiduciary duty imposed here to bring the statute within § 523(a)(4)." (construing 36 Okl.St.Ann. § 1465(E)) with Kelley, 215 B.R. at 474:

> [36 Okl.St.Ann. § 1445] identifies as a trust res all
> the insurance charges or premiums that an administrator
> collects for an insurer, and <u>spells out the
> administrator's fiduciary duty by specifying the few</u>

-7-

> <u>permissible uses of the premiums he collects</u>. While a
> trustee is ordinarily not permitted to mingle property
> held in trust with property not subject to the same
> trust, we believe a trustee can be permitted to mingle
> the property of one trust with the property of another
> trust when permission to do so is given at the creation
> of each trust, as this statute does, and the trustee
> keeps an accurate record of the contributions of each
> trust, as the statute requires. <u>See</u> Restatement
> (Second) of Trusts § 179 (1959). Finally, if § 1445
> applies to Kelley and his collections from his
> customers, we believe the provision imposed a trust on
> the collections from the moment his customers paid him,
> so he would have held them in the kind of fiduciary
> capacity that is covered by § 523(a)(4).

(Emphasis added.)

<u>(3) The statute must impose a trust on funds prior to the act creating the debt.</u>

Under 7 U.S.C. § 499(e)(c)(2) the trust automatically arises upon receipt of perishable agricultural commodities. The trust arises whether or not there is a defalcation or dissipation of assets by the buyer, receiver or agent. 7 C.F.R. § 46.46(a)(1) (defining "receipt").

The Court finds that the PACA trust satisfies the three part test adopted in <u>Kelley</u>.

**<u>LACK OF SEGREGATION OF FUNDS</u>**

Defendant argues that because the trust funds are commingled with general revenues and can be used to pay other creditors there can be no trust and no resulting fiduciary duties for the purposes of section 523(a)(4). This was the ruling in <u>Cardile Bros. Mushroom Pkg., Inc. v. McCue (In re McCue)</u>, 324 B.R. 389, 393 (Bankr. M.D. Fla. 2005):

-8-

> Because a PACA res is not a segregated trust res,
> Plaintiffs cannot prove the existence of an express or
> technical trust. Because Plaintiffs cannot prove the
> existence of an express or technical trust, McCue's
> debt to Plaintiffs resulting from his breach of the
> PACA trust is not a debt for defalcation while acting
> in a fiduciary capacity pursuant to 11 U.S.C. §
> 523(a)(4).

(Footnote omitted.) This Court disagrees.

First, the Restatement (Third) of Trusts § 84 (2007) notes that, normally, there is a duty to keep trust property separate.

> The trustee has a duty to see that trust property is
> designated or identifiable as property of the trust,
> and also a duty to keep the trust property separate
> from the trustee's own property and, so far as
> practical, separate from other property not subject to
> the trust.

However, comments (d), (d)(2) and (e) list exceptions. Comment (d) states that ordinarily a trustee has a duty to have trust property designated or made identifiable as trust property. Comment (d)(2) allows for an exception to the general rule when earmarking is not feasible as long as the trustee keeps adequate records. Comment (e) allows for an exception when the terms of the trust allow trust property to be commingled or jointly held with the trustee's own property.

The Court finds that the exceptions in both comments (d)(2) and (e) are relevant. Earmarking in this case would not be feasible nor would it be cost effective to account for every single transaction in produce from farm to market. See Foothill Capital Corp. v. Clare's Food Market, Inc. (In re Coupon Clearing

-9-

Service, Inc.), 113 F.3d 1091, 1100-01 (9th Cir. 1997):

> Regardless of the existence of an agency relationship, the ShopRite Retailers contend that the coupon proceeds were held in trust for the ShopRite Retailers by CCS. Although CCS was not required to segregate the coupon proceeds, the ShopRite Retailers argue that CCS lacked the authority to commingle the coupon proceeds with its general operating funds or pledge them as security. Furthermore, the ShopRite Retailers claim that the fact that CCS placed the coupon proceeds of different retailers in one lockbox account is not determinative where the proceeds are separately identifiable and traceable, especially where the amounts received by the agent are small or where there is a series of transactions. See, e.g., In re Penn Cent. Transp. Co., 486 F.2d 519, 525 (3d Cir. 1973) (trust imposed despite commingling since segregation of funds could be impractical due to their magnitude and number of entities involved). In Penn Central Transportation Co., the debtor Penn Central collected money for interline railroads and deposited the proceeds in its general account, commingling the proceeds of different carriers with its own funds. Id. The court in Penn Central Transportation Co. found that because the collected funds were traceable and no provision for interest payments by the carriers existed, Penn Central held the funds in trust for the carriers. See id. at 526. The court noted that, "[w]hile generally commingling indicates a debtor-creditor relationship and not a trust, it is only one indicium and it too is not necessarily conclusive." Id. at 524.

Second, other courts have found that PACA creates an express trust despite the lack of segregation. See JSG Trading Corp. v. Tray-Wrap, Inc., 917 F.2d 75, 78 (2nd Cir. 1990):

> The trust impressed by [PACA] is a nonsegregated "floating trust" made up of all a firm's commodity related liquid assets, under which there may be a commingling of trust assets. Under this provision there is no necessity to specifically identify all of the trust assets through each step of the assets accrual and disposal process. Since commingling is contemplated, all trust assets would be subject to the

>     claims of unpaid seller-suppliers and agents to the
>     extent of the amount owed them.

(quoting H.R. Rep. No. 543, 98th Cong., 2d Sess. 5 reprinted in 1984 U.S. Code Cong. & Admin. News at 409.); N.P. Deoudes, Inc. v. Snyder (In re Snyder), 184 B.R. 473, 475 (D. Md. 1995) (Segregation of PACA trust assets is not required.  However, segregation of funds is not a mandatory element of an express trust.)(Citations omitted.)

Third, segregation of PACA assets is a remedy that can be awarded.  7 U.S.C. §§ 499e(c)(3) and (c)(5).

> Upon a showing that the trust is being dissipated or
> threatened with dissipation, a district court should
> require the PACA debtor to escrow its proceeds from
> produce sales, identify its receivables, and inventory
> its assets.  It should then require the PACA debtor to
> separate and maintain these produce-related assets as
> the PACA trust for the benefit of all unpaid sellers
> having a bona fide claim.  7 U.S.C.A. § 499e(c)(3).
> Each beneficiary would then be entitled to its pro rata
> share.

Frio Ice, S.A. v. Sunfruit, Inc., 918 F.2d 154, 159 (11th Cir. 1990).  If this relief is listed as a remedy in the event of dissipation, it does not seem likely that segregation would be the normal state of affairs absent dissipation.

**CONCLUSION**

Because the Court finds that a PACA trust satisfies the requirements of an express trust, and that Defendant failed to pay Plaintiffs as required, the Second Amended Complaint states a claim for relief.  The Court will enter an Order Denying

-11-

Defendant's Motion to Dismiss and will schedule a pretrial conference.

*/s/ James S. Starzynski*

Honorable James S. Starzynski
United States Bankruptcy Judge

Date Entered on Docket:  August 26, 2011

Copies to:

Katy Koestner Esquivel
Meuers Law Firm, PL
Attorney for Plaintiffs
5395 Park Central
Naples, FL 34102

David T Thuma
Thuma & Walker, P.C.
Attorney for Defendant
500 Marquette Ave NW Ste 650
Albuquerque, NM 87102-5309

Stephanie L Schaeffer
Thuma & Walker, P.C.
Attorney for Defendant
500 Marquette NW Suite 650
Albuquerque, NM 87102

Shannon Robinson
Attorney for Third Party Defendants
800 Lomas N.W., Suite 101
Albuquerque, NM 87102